IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL L. STOVER, )<br>)<br>Plaintiff, )<br>)<br>) | Civil Action No. 05-363 Erie |
| v. )<br>) | |
| JO ANNE BARNHART, )<br>Commissioner of Social Security, )<br>) | |
| Defendant. ) | |

### MEMORANDUM OPINION

McLAUGHLIN, SEAN, J.

Plaintiff, Russell L. Stover, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, who found that he was not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Stover filed an application for SSI on June 28, 2002, alleging disability since June 2, 1993 due to diabetes (Administrative Record, hereinafter "AR", 50-53; 58).[1] His application was denied, and a hearing was held before an administrative law judge ("ALJ") on May 5, 2003 (AR 224-251). Following this hearing, the ALJ found that he was not eligible for SSI under the Act (AR 9-23). The Appeals Council denied Stover's request for review, and he instituted an action in this Court (AR 4-6). Pursuant to the Commissioner's motion to remand, we remanded the matter to the Commissioner. *See Stover v. Barnhart*, C.A. No. 04-120 (W.D.Pa. Oct. 6, 2004).

The Commissioner subsequently remanded the case to the ALJ in order to obtain evidence from a vocational expert, and a second hearing was held on April 1, 2005 (AR 280-281; 322-352). On June 23, 2005, the ALJ again found that Stover was not eligible for SSI under the Act (AR 265-273). His request for review by the Appeals Council was denied (AR 252-254), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action

---

[1]Stover amended the onset of disability date to August 29, 2002 as his first administrative hearing (AR 241).

challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will deny both motions and the case will be remanded to the ALJ for further proceedings.

## I. BACKGROUND

Stover was born on March 17, 1969, and was thirty-six years old on the date of the ALJ's decision (AR 50; 266). He has a high school education and no past work experience (AR 266).

### A.     *Evidence submitted prior to the first administrative hearing*

Stover has been treated by Peter J. Thompson, M.D., since December 1994 (AR 118). Prior to his alleged onset of disability date of August 29, 2002, Dr. Thompson's treatment notes reflect that at times Stover's diabetes was well-controlled, and at other times he suffered from hypoglycemic episodes requiring emergency room treatment (AR 98-118; 153-161). Dr. Thompson's treatment notes further reflect that Stover had a long history of depression with some seasonal affective disorder (AR 98;153). In May of 2001, Stover apparently injured his groin while playing baseball (AR 160). In July 2001 he reported seizure activity, although an MRI was normal and he had normal sensory and motor function (AR 159). As of August 12, 2002, Dr. Thompson opined that Stover was capable of light work, but could only occasionally bend and crouch, and had environmental limitations (AR 99-100).

The medical evidence reflects that after Stover's alleged onset date, he returned to Dr. Thompson on August 30, 2002, for follow-up reportedly having "significant trouble" (AR 153). He complained of left-sided numbness with slurred speech, "terrific" anxiety due to his pending divorce, and reported emergency room treatment the night before (AR 153). Dr. Thompson reported that his diabetes was reasonably controlled, and a CT scan conducted in the hospital was negative (AR 153). Dr. Thompson assessed questionable seizures, added Ativan to his medication regime and scheduled an EEG (AR 153).

On September 4, 2002, Dr. Thompson reported that Stover was doing better, had not had any seizures, and his starring spells and slurred speech were better (AR 152). His blood sugar was good, and Dr. Thompson was of the opinion that he was suffering from mental stress (AR 152). He released him to return to work (AR 152). Dr. Thompson's office reported that Stover's affect had stabilized with Paxil, he continued to do well with medication and was able to return

to work AR 97).

Stover's blood sugar was under much tighter control and he was doing better on October 1, 2002 (AR 152). He reported a "little" twitching of his face but no seizures, and a CT scan was negative (AR 151-152). On October 13, 2002 Stover reported the absence of seizures and that he was "doing good" although his blood sugar was lower and he complained of headaches (AR 152).

Edward Zuckerman, Ph.D., a state agency reviewing psychologist, completed a psychiatric review technique form on September 17, 2002, and concluded that Stover's mental impairment was not severe (AR 133). He found Stover had no restrictions in his activities of daily living or difficulties in maintaining social functioning, had only mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of an extended duration (AR 143).

An EEG conducted September 18, 2002 was reported as normal, and an MRI of Stover's brain conducted on September 25, 2002 was also normal (AR 149).

On December 11, 2002, Stover reported that his blood sugar was still running low and he had more hypoglycemia (AR 170). He claimed he was once found lying in his basement (AR 170). He reported that his nerves were "very bad again" (AR 170). Stover complained of increased depression and was started on Effexor (AR 170). Dr. Thompson's treatment notes reflect that Stover's attention span was poor, and "he absolutely [could] not do anything" (AR 170). Because of his attention difficulties and hypoglycemia, Dr. Thompson precluded driving (AR 170).

On January 27, 2003, Stover was treated at the emergency room for a hypoglycemic episode after his family found him unconscious in the bathroom (AR 196-199).

In February 2003 Dr. Thompson noted that Stover's blood sugar was low (AR 170). On April 3, 2003, Stover reported he continued to feel depressed and anxious (AR 170). Dr. Thompson reported that he was seizure free and his neurological examination was normal (AR 170). On February 19, 2003, Stover presented to the emergency room complaining of wrist pain which he attributed to the January 2003 incident when he was found unresponsive (AR 191).

On April 18, 2003, Dr. Thompson wrote to Stover's counsel (AR 169). Among other

3

things, he reported that Stover suffered from recurrent hypoglycemic episodes which were triggered by physical activity, and had loss of consciousness (AR 169). He further reported that when found unconscious he had been revived with the use of D50 or IV Glucose (AR 169). Dr. Thompson opined that he was only capable of a "menial type" where the exposure to stressful situations and dangerous situations, such as heights, machinery, etc., were eliminated (AR 169). Dr. Thompson was of the opinion that he required a sedentary job with rote type activity (AR 169).

On April 28, 2003, Dr. Thompson rendered a residual functional capacity evaluation (AR 176-180). Dr. Thompson opined that Stover could sit for eight hours, stand for four hours, walk for two hours, and sit/stand combined for two hours (AR 176). He concluded that he was able to lift up to twenty pounds less than one-third of a workday, could carry up to ten pounds up to one-third of a workday, and carry up to twenty pounds less than one-third of a workday (AR 176-177). He was able to us his hands for simple grasping and fine manipulating, but not for pushing and pulling, and could use his feet for repetitive movements (AR 177). Dr. Thompson restricted postural activities to less than one-third of a day, and imposed moderate restrictions with respect to unprotected heights and moving machinery (AR 178).

Dr. Thompson opined that Stover could work a full week at a time, but could work less than four consecutive weeks at a time (AR 178). In support of his opinion, Dr. Thompson stated that Stover had no physical problems, but had very unstable diabetes and needed injections four times per day, and when abnormal, he had frequent hypo and hyper blood sugar (AR 179). He also suffered from depression (AR 179). Dr. Thompson concluded that both problems made it impossible for him to work on a regular basis (AR 179).

Stover testified at the first hearing held by the ALJ on May 15, 2003 (AR 224-251). He testified that he has suffered from diabetes for 23 years but it had become worse the last several years (AR 243). He suffered from low blood sugar as many as six times per day, which caused him to become shaky and rude with people (AR 244-245). A couple of times per week his blood sugar became high and he just wanted to lay around (AR 244; 248). He testified that he lost two jobs due to hypoglycemic episodes, and recounted two instances wherein he had been found unresponsive at home (AR 244-246). Stover claimed he was compliant with his medication

regime and checked his blood sugar three times per day every other day, but was unable to explain why his diabetes was not under control (AR 232; 236-237). He also took Dilantin for seizure type activity, and Paxil which helped his depression (AR 234; 236).

Stover testified that he was able to drive, but occasionally had to pull over when his blood sugar became low (AR 233). He further testified that he did not "do a lot" with respect to daily activities, but was able to help with household chores, attend to his personal needs and cook for himself (AR 239). He was able to watch television, play cards, walk approximately half a mile, stand for approximately 15 to 20 minutes, lift 30 pounds, and had no problems sitting or bending (AR 239-240). However, Stover claimed to suffer from groin/penis neuropathy approximately three to four times per week which caused irritability and an inability to sit (AR 241-242).

As previously indicated, the ALJ denied Stover's claim following the first hearing, and the Appeals Council denied his request for review. After instituting an action in this Court, the matter was remanded to secure vocational expert testimony pursuant to the request of the Commissioner.

> **B.**     *Evidence submitted after remand and prior to the second administrative hearing*

Subsequent to the first administrative hearing, Stover submitted additional medical documentation from Dr. Thompson, an emergency room record referencing treatment for a hypoglycemic episode, and a statement from a home health aide.

With respect to Dr. Thompson's treatment notes, the medical evidence reflects that on June 30, 2004, Stover reported suffering from a seizure while at the shore due to low blood sugar (AR 314). Dr. Thompson noted that his sugars were better, and recommended that he avoid excessive work in the heat and sweating (AR 314).

On November 2, 2004, Stover reported problems with hypoglycemia due to raking leaves and getting ready for winter (AR 314). Dr. Thompson noted that Stover had not been eating an extra snack which he needed, and encouraged him to take an extra snack in the afternoon when he worked (AR 314). Stover had not had any seizure activity (AR 314).

Stover returned to Dr. Thompson on December 21, 2004, and reported a hypoglycemic episode while driving wherein he ended up on the other side of the road (AR 313). A friend

5

recognized him and was able to revive him (AR 313). Dr. Thompson encouraged him to eat on time (AR 313).

On March 5, 2005, Dr. Thompson opined that Stover was totally disabled (AR 312). When Stover returned to Dr. Thompson on March 8, 2005, he relayed one seizure episode due to low blood sugar which was the result of not eating due to the flu (AR 313). Dr. Thompson reported that on that date he felt "good" (AR 313).

On March 10, 2005, Stover sought emergency room treatment for a hypoglycemic episode (AR 297-302; 318).

Lynne M. Delaney, a home health aid who cared for Stover's grandmother, submitted a statement indicating that since November 2004, Stover suffered from low blood sugar episodes (AR 286). Ms. Delaney indicated the "worst" episode occurred on March 31, 2005, when Stover became combative, uncooperative and argumentative (AR 286). Following this episode, Stover became "very exhausted and lethargic" (AR 286).

Stover, his mother, and Joseph Kuhar, a vocational expert, testified at the second hearing held by the ALJ on April 1, 2005 (AR 322-352). Stover testified that he was undergoing mental health counseling approximately twice a month (AR 330-331). He claimed that his diabetes had worsened since the last hearing, in that he was unable to walk or lift, and was only able to watch television (AR 332). He took two insulin shots per day and tested his blood sugar three times per day (AR 333). Stover claimed that in addition to the neuropathy in his groin, his right arm was now affected (AR 335). On the day before the hearing, Stover suffered a violent outburst and was given glucose by ambulance personnel (AR 339). He suffered from 10 to 15 low blood sugar episodes per day, and spent most of his time at home (AR 340-341).

Patricia Swarm, Stover's mother, testified that he lived with her and that she made sure he ate and tested himself (AR 342-343). She further testified that he tested his blood sugar level three to four times per day, and took two shots per day (AR 343). She claimed that she called Dr. Thompson repeatedly and he would adjust Stover's medication over the telephone (AR 344). His hypoglycemic episodes occurred daily, and at times she required assistance from emergency personnel due to his violent outbursts (AR 345-346).

The ALJ asked the expert to assume an individual of the same age and education as

Stover, who was capable of light work that was simple and repetitive, with no more than incidental interaction with the public (AR 347-348). The expert opined that such an individual could perform the jobs of a mold cleaner, hand packer and office cleaner (AR 348). The expert further opined that if such an individual were in a altered state of consciousness one or more times per day, he would not be able to deal effectively with supervisors and/or co-workers, negating the existence of jobs in significant numbers (AR 349).

Following the testimony, the ALJ noted that in light of the statement from the home health aid, it appeared that Stover suffered from significant episodes, but he did not consider the record fully developed with respect to the frequency or severity of the episodes (AR 350-351). The ALJ suggested that Stover secure a statement from Dr. Thompson stating that his records were incomplete as to the number and frequency of calls for assistance, or, alternatively, secure statements from non-family members who had observed Stover's hypoglycemic episodes (AR 350-351).

### C.   *Evidence submitted after the second administrative hearing*

Pursuant to the ALJ's suggestion, Stover subsequently submitted a letter from Dr. Thompson dated April 12, 2005, which stated that although not recorded, there had been numerous occasions wherein Stover's mother had called several times per week, as well as daily, seeking advice regarding his insulin coverage (AR 321). Stover further submitted statements from nine individuals who reportedly observed his hypoglycemic episodes during different time frames (AR 287-294).

On June 23, 2005, the ALJ issued a written decision which found that Stover was not eligible for SSI within the meaning of the Social Security Act (AR 265-273). His request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 252-254). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988)

(quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ resolved Stover's case at the fifth step. At step two, the ALJ determined that Stover's diabetes and depression were severe impairments, but determined at step three that he did not meet a listing (AR 269). At step four, the ALJ determined that Stover had no past relevant work experience, but retained the residual functional capacity to perform light work with incidental interaction with the public (AR 270). At the final step, the ALJ determined that he could perform the jobs cited by the vocational expert at the administrative hearing (AR 271). The ALJ additionally determined that Stover's allegations regarding his limitations were not totally credible (AR 272). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Although Stover sets forth a number of errors allegedly committed by the ALJ, fundamentally he argues that the ALJ violated

the treating physician rule and failed to resolve evidence which supported the duration and frequency of his diabetic episodes. We shall address each of these arguments in turn.

Stover's first argument in substance is that ALJ failed to give controlling weight to the opinion of his treating physician, Dr. Thompson, and/or rejected his opinion on inadequate grounds in violation of the treating physician rule. It is well settled in this Circuit that the opinion of a treating physician is entitled to great weight and can only be rejected on the basis of contrary medical evidence. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988). An ALJ must articulate in writing his or her reasons for rejecting such evidence. *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981). In the absence of such an indication, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id*. "[T]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Social Security Admin.*, 181 F.3d 429, 433 (3rd Cir. 1999) (citations omitted). Further, because of his or her long standing relationship with the claimant, the opinion of a treating physician is entitled to more weight than that of a physician who examined the claimant only once or not at all. *Mason v. Shalala,* 994 F.2d 1058, 1067 (3rd Cir. 1993). Moreover, "a finding of residual capacity for work which conflicts with such an opinion and is made without analytical comment or record reference to contradictory evidence is not supported by substantial evidence." *Gillard v. Heckler,* 786 F.2d 178, 183 (3rd Cir. 1986).

Here, Stover contends in essence that the ALJ rejected Dr. Thompson's opinion without pointing to contrary evidence of record. On April 28, 2003, Dr. Thompson rendered a residual functional capacity evaluation (AR 176-180). In addition to rendering an opinion with respect to Stover's exertional capacity, of critical note for our purposes, Dr. Thompson stated that while Stover had no physical problems, he had "very unstable" diabetes requiring four injections per day and when abnormal, had frequent hypo and hyper blood sugar (AR 179). Dr. Thompson opined that this condition, in conjunction with his depression, made it "impossible for him to work on [a] regular basis" (AR 179). The ALJ rejected this opinion on the basis that it was not supported by the medical evidence and "highly speculative" (AR 268).

We find that the ALJ violated the principles announced in *Cotter v. Harris,* 642 F.2d 700 (3rd Cir. 1981), in that he failed to adequately explain his rejection of Dr. Thompson's opinion.

The only "medical evidence" referred to by the ALJ was the "fact" that Dr. Thompson, in previous statements, had indicated that Stover's conditions were stable (AR 268). Although it is difficult to discern which "statements" the ALJ is referring to since he failed to cite to any particular record in this regard, we assume he is referring to the notations in Dr. Thompson's treatment notes which predated his April 2003 opinion. To be sure, these treatment notes do contain entries stating that Stover was doing better, his blood sugar was under much tighter control and he was seizure free (AR 152-153; 170). However, these same records also reflect that at other times he suffered from hypoglycemic episodes wherein he was found passed out or required emergency room treatment (AR 170; 196-199). The ALJ selectively relied upon those treatment note entries which supported his determination while rejecting those which did not without adequate explanation.

Whatever the import of the early notations on which the ALJ relied, the ALJ's decision is completely devoid of any discussion of the medical evidence *following* Dr. Thompson's April 2003 opinion. The medical evidence is replete with instances of Stover suffering from recurrent hypoglycemic episodes, as well as seizures secondary to these episodes. For example, in June 2004 he suffered a seizure secondary to low blood sugar; he suffered hypoglycemic episodes in November 2004 and December 2004; he suffered a seizure on March 8, 2005 due to low blood sugar; and he sought emergency room treatment for a hypoglycemic episode on March 10, 2004 (AR 313-314; 297-302). While the ALJ is not required to discuss every piece of evidence, it is clear that this evidence was sufficiently material to require the ALJ to adequately explain his apparent rejection of this evidence. *Cotter,* 642 F.2d at 707 n.10; *Shorts v. Harris,* 516 F. Supp. 498, 500 (W.D.Pa. 1981) (more particularized discussion of reasons for rejecting probative evidence required).

Finally, the ALJ's decision fails to adequately explain his apparent rejection of Dr. Thompson's most recent opinion rendered in March 2005, wherein he opined that Stover was totally disabled (AR 312). While we recognize that the ultimate decision concerning the disability of a claimant is reserved for the Commissioner, *Knepp v. Apfel,* 204 F.3d 78, 85 (3rd Cir. 2000), this opinion is consistent with Dr. Thompson's April 2003 opinion.

Stover also contends that the ALJ's conclusion as to the duration and frequency of his

diabetic episodes is not supported by substantial evidence. In this regard, we find that the ALJ's approach suffers from the same deficiency discussed above (i.e., a failure to discuss the impact of relevant and material evidence). *See e.g., Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 122 (3rd Cir. 2000) (ALJ must also consider and weigh all of the non-medical evidence before him).

Specifically, we note that although inviting additional evidence supporting the disabling nature of his hypoglycemic episodes, the ALJ failed to address the statements from nine individuals who reportedly observed his hypoglycemic episodes over different periods of time (AR 287-294). Moreover, he did not address Dr. Thompson's letter of April 12, 2005, which supported the testimony of Stover's mother as to the frequency of her calls relative to her son's hypoglycemic episodes (AR 321).

## IV. CONCLUSION

For the foregoing reasons, both motions for summary judgment shall be denied. In light of the deficiencies discussed above, the matter shall be remanded to the ALJ for further proceedings consistent with this Memorandum Opinion. On remand, the ALJ is directed to address the medical evidence consistent with the dictates of *Cotter,* and address the impact of the non-medical evidence relative to Stover's hypoglycemic episodes as required by *Burnett.* The ALJ is free to seek additional evidence and/or call a vocational expert if he feels it is necessary. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL L. STOVER,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant. | )<br>)<br>)<br>) Civil Action No. 05-363 Erie<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

  AND NOW, THIS 26th day of June, 2006, for the reasons set forth in the accompanying Memorandum Opinion,

  IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 9] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 11] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

  The clerk is directed to mark the case closed.

                s/ Sean J. McLaughlin
                United States District Judge

cm: All parties of record.